684 So.2d 857 (1996)
John CRITTENDEN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 96-1214.
District Court of Appeal of Florida, Fifth District.
December 13, 1996.
*858 James G. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Steven J. Guardiano, Assistant Attorney General, Daytona Beach, for Appellee.
DAUKSCH, Judge.
Appellant appeals a judgment and sentence for armed robbery, aggravated assault, false imprisonment and grand theft.
The evidence at trial showed that Carol Mochnick was working as a postal clerk when a young black man, a regular customer, came to the window and asked about a registered letter he had sent his father. Mochnick had previously spoken with him about the letter on two occasions. She identified the individual as Ryan Francis. After he left, Mochnick waited on another woman after which she closed her window and began doing her paperwork. Irwin Zweigbaum, the owner of the store in which the post office was situated, was in the building at the time sweeping. A minute or two after Mochnick closed her window, two black men entered, one of whom was Francis. Eventually, a third young black, tall, thin man appeared who had a gun. Because it had been raining, the men were wet. They were wearing dark hooded pullovers and baggy shorts. The gunman was also wearing a scarf around his face.
Mochnick was scared and the men were scared. The gunman had a gun on her. He later had the gun on Zweigbaum who was lying on the floor. Zweigbaum told Mochnick to give the men what they wanted. Using profanity, the gunman asked her where the money was, after which the men went to the cash drawer and began taking money from the drawer. Mochnick did not try to stop them because she was afraid they would shoot her. The evidence showed that the men took between $500 and $560 in cash. When they finished, they asked Mochnick where the rest was, saying there had to be more. They left when someone came in to get their mail. The entire incident took about five minutes.
The police were called, after which Mochnick checked the record of registered letters to find out with whom she had spoken earlier. Obtaining the receipt from Ryan Francis' letter, she informed the police of his identity. She accompanied the police to a home inside of which they found a pile of wet clothing with a dark sweatshirt and a pair of shorts with mud on them. The clothing was similar to the clothing worn by the perpetrators. Mochnick identified some clothing in court as similar to the clothing she had seen. She was unable to identify the perpetrators because she had looked away during the robbery testifying, "I didn't want to watch them."
Irwin Zweigbaum testified that his wife was the "contract holder" of the post office. Contract stations, as explained by Zweigbaum, are branch offices of the main post office which are run by private individuals.
As to the robbery, Zweigbaum recalled having seen a young black man come in and talk to Mochnick about a registered letter. The building emptied out after which he and Mochnick had begun closing her window. Zweigbaum heard or felt the front door open and saw three men come in. He thought they were wearing white shorts. Recognizing the man he had seen earlier, he asked the men if he could help them. One of them reached into his waistband and pointed a gun at Zweigbaum's chest. He had a scarf wrapped around his face. Zweigbaum only saw the barrel of the gun because the rest of it was covered by the man's shirt. The man *859 said, "Okay, mother ... this is a stickup" or "Get in the back, I want the money." Zweigbaum was unhappy and concerned that the man might pull the trigger. Taking the men back to Mochnick at gunpoint, he told her to give them whatever they wanted. Ordered to lie down on his side facing the wall, Zweigbaum heard them rummaging through the cash drawer. Appearing nervous, the gunman asked Zweigbaum where the rest was. Zweigbaum told him there was no more. Although he was able to see the gunman's face, he was not able to positively identify him in court. The men left when someone came in to get their mail.
Zweigbaum was unable to identify the perpetrators but admitted having previously chosen Ryan Francis out of a photographic lineup as the man with the gun. He testified that the police took him to a home where he saw two pairs of wet white shorts and some dark shirts on a bed and a wet pair of shorts and a dark shirt on the floor. The clothes were similar to the clothes worn by the perpetrators. Zweigbaum identified a photograph of some clothing as the clothing he had seen. Although appellant later confessed that he was the gunman to the police, at trial he denied having participated in the commission of the offenses.
Relying upon Sirmons v. State, 634 So.2d 153 (Fla.1994), appellant contends on appeal that his convictions for armed robbery and grand theft are improper because both offenses are aggravated forms of the same underlying offense of theft, distinguished only by degree factors. We agree that appellant cannot be convicted of robbery and theft based upon the same act of taking the same property by force. See Hawkes v. State, 677 So.2d 103 (Fla. 5th DCA 1996); Ricks v. State, 656 So.2d 633 (Fla. 5th DCA 1995). Accordingly, the judgment and sentence for grand theft is reversed. In all other respects it is affirmed.
JUDGMENT and SENTENCE AFFIRMED in part; REVERSED in part.
COBB and HARRIS, JJ., concur.